[No. 20514.  In Bank.—April 16, 1889.]

## J. CHARLES GREEN, PETITIONER, v. SUPERIOR COURT OF SAN FRANCISCO, RESPONDENT.

CONSTITUTIONAL LAW—CRIMINAL JURISDICTION OF SUPERIOR COURT—POLICE COURT OF SAN FRANCISCO—MISDEMEANORS—CONSPIRACY. — Section 5 of article 6 of the constitution vests the superior court with jurisdiction in cases of misdemeanor only when not otherwise provided for; and when, in pursuance of the provisions of the constitution, the legislature gives jurisdiction to the police judge's court of the city and county of San Francisco in cases of misdemeanor, including therein the offense of conspiracy, such jurisdiction of the police judge's court becomes exclusive, and the superior court of the city and county has no jurisdiction of the offense of conspiracy, it being a case of misdemeanor already provided for.

ID. — COMMON LAW—HIGH AND LOW MISDEMEANORS—INFAMOUS OFFENSES. — The common-law distinction between high and low misdemeanors, depending upon the question whether the offense charged was infamous or not, has never been recognized in this state. The constitution and statutes relate exclusively to felonies and misdemeanors, and all misdemeanors are included in the power of the legislature to vest exclusive jurisdiction thereof in inferior courts, without providing for their prosecution by indictment or information. (PATERSON, J., dissenting.)

ID. — PROHIBITION. — The writ of prohibition will lie to prevent a superior court from proceeding further in a criminal action of which it has no jurisdiction under the constitution.

APPLICATION for writ of prohibiton. The petitioner was indicted in the superior court of the city and county of San Francisco for conspiring with others to extort money. A bench-warrant was issued for his arrest, and the superior court was about to proceed with the trial

when the writ of prohibition was applied for.   The further facts are stated in the opinion of the court.

*J. M. Lesser,* and *Davis Louderback,* for Petitioner.

*James D. Page, W. A. Nygh,* and *J. H. Durst,* for Respondent.

Works, J.— This is an application for a writ of prohibition to prevent the superior court in and for the city and county of San Francisco from proceeding further in an action of the people against the petitioner, upon a charge of conspiracy.

The ground upon which the jurisdiction of the superior court is contested is, that conspiracy is punished by imprisonment not exceeding one year, or by fine not exceeding one thousand dollars, or by both, and that jurisdiction in such cases is exclusive in the police court of said city and county.

The judicial power of this state is vested in the senate sitting as a court of impeachment, in a supreme court, superior courts, justices of the peace, and such inferior courts as the legislature may establish *in any incorporated city or town or city and county.*   (Constitution, art. 6, sec. 1.)

The constitution provides that the superior courts shall have jurisdiction in all criminal cases amounting to felony, and cases of misdemeanor *not otherwise provided for.*   (Art. 6, sec. 5.)   It is further provided that the legislature shall fix by law the jurisdiction of any inferior courts which may be established in pursuance of section 1 of this article, and shall fix by law the powers, duties, and responsibilities of the judges thereof.   In pursuance of these constitutional provisions, the legislature of the state has, by what is known as the consolidation act, as amended in 1872, prescribed the jurisdiction of the police court of the city and county of San Francisco; and among other things it is provided that

said court shall have jurisdiction of misdemeanors punishable by fine not exceeding one thousand dollars, or by imprisonment not exceeding one year, or by both, which necessarily includes the offense charged in this case, and of which the superior court has assumed jurisdiction.

The point made and relied upon in this application is, that under the provisions of the constitution the legislature has the power to establish inferior courts, and to confer upon such courts jurisdiction in cases of misdemeanor, and that when such jurisdiction is so provided for, the jurisdiction in that class of cases is taken away from the superior courts for the reason that they become misdemeanors "otherwise provided for" within the meaning of the constitution.

Conspiracy is punishable by a fine of not exceeding one thousand dollars, and imprisonment for one year, or by both, and jurisdiction in this class of cases is clearly conferred on the police judge's court. (Stats. 1871–72, p. 84.) And this statute is still in force under the present code. (*Ex parte Simpson*, 47 Cal. 127.)

This jurisdiction has been reaffirmed by legislation subsequent to the adoption of the present constitution. (Stats. 1881, p. 75, act to create a police court in and for the city and county of San Francisco, approved March 5, 1889.)

These acts expressly exclude jurisdiction of justices' courts from this class of cases. It seems to us, therefore, that the only question that can arise here is, whether the jurisdiction conferred upon police courts in this class of cases is exclusive or concurrent with that of the superior courts. The evident object and purpose of the constitution in providing for the jurisdiction of superior courts in cases of misdemeanor of the lower grades was to leave it to the legislature to provide inferior courts in cities and towns, with jurisdiction to try the same, and that such jurisdiction should vest in the superior courts only until such inferior courts should be

provided for. The language of the constitution can bear no other construction. It vests this jurisdiction in the superior court, if not otherwise provided for. Just so soon as the jurisdiction is otherwise provided for, the authority of the superior court to act ceases. This has been held in the case of the justices' courts. (*Ex parte Wallingford,* 60 Cal. 103; *Gafford* v. *Bush,* 60 Cal. 149.)

In *Ex parte Wallingford* the court says: "It is thus seen that by the express terms of the constitution the legislature is empowered to establish justices' courts, and to confer upon them such powers as to it shall seem proper, provided such powers shall not in any case trench upon the jurisdiction of the several courts of record, with the exceptions already noticed. The limitation as to trenching upon the jurisdiction of the several courts of record obviously refers to the jurisdiction conferred upon those courts by the constitution itself. For example, as the constitution confers upon the superior court jurisdiction in all cases of felony, the legislature could not confer on the justice's court jurisdiction in such a case. But while the constitution also confers on the superior court jurisdiction in cases of misdemeanor, it is of misdemeanors that are *not otherwise provided for.* When the legislature, pursuant to the power conferred by section 11 of article 6, 'to otherwise provide for' certain or all misdemeanors, *does* otherwise provide for certain of them, and confers upon the justice's court jurisdiction in certain cases of misdemeanor, the jurisdiction so conferred becomes exclusive, for they then become cases of misdemeanor 'otherwise provided for,' over which, according to the express language of the constitution, the superior court has no jurisdiction."

The only conceivable difference between the cases cited and the one at bar is, that the justices' courts are expressly created by the constitution, while the police court is one created by the legislature under the author-

ity of the constitution. We regard this difference as of no importance as affecting the question before us.

Taking the several constitutional provisions together, they vest in the inferior courts such jurisdiction as may be given them, so long as the jurisdiction thus conferred upon them does not infringe upon the jurisdiction expressly conferred upon some other court by the constitution itself. Section 1 of article 6 vests jurisdiction in such inferior courts as the legislature may establish in any incorporated city or town or city and county. This must be held to apply to the city and county of San Francisco, as it is the only consolidated city and county in the state. Section 13 of the same article provides: "The legislature shall fix by law the jurisdiction of any inferior courts which may be established in pursuance of section 1 of this article, and shall fix by law the powers, duties, and responsibilities of the judges thereof."

Taking these constitutional provisions, together with the act creating the police court and defining its jurisdiction, and the jurisdiction may be said to be vested in the court by the constitution. We find nothing in the constitution or the statute indicating an intention to make the jurisdiction concurrent in the two courts.

In opposition to this view, counsel for the respondent lay down this proposition: "In order that a jurisdiction may 'be otherwise provided for,' within the meaning of section 5 of article 6 of the constitution, that jurisdiction must be vested by the legislature throughout the state in a system of courts whose aggregate territorial jurisdiction will be co-extensive with the aggregate territorial jurisdiction of the system of superior courts; in other words, it must be taken from the superior courts as a system, and vested in some other courts as a system." And enlarging upon this proposition, they say further: "The constitution uses the term 'the superior court' (article 6, section 5); that term is a collective term. The constitution is dealing, not with individual superior

courts, as separate and distinct courts, and as county establishments, but with the superior courts as a state system of courts. It is organizing a branch of the judicial department of the state government. It is engaged in creating a state institution,—a state establishment. The superior court as a system of courts is the subject-matter with which it is at work. It delimits the jurisdiction of that system. It gives that system as a unit the jurisdiction over misdemeanors. It declares a subtraction in a certain event from the jurisdiction, not of one distinct superior court, but from the jurisdiction of the entire system." In support of this contention, counsel cite *Spencer Creek Water Company* v. *Vallejo*, 48 Cal. 72; *In re Marks*, 45 Cal. 217. But these cases do not sustain the position assumed.

This course of reasoning is plausible and ingenious, but not convincing. It goes to the expediency of the constitutional provision under consideration, and the statutes enacted under it, rather than to their construction. But we fail to recognize the force of the argument as affecting the expediency of the law. In counties like San Francisco, or other counties in which large cities are situated, where the superior court in all its departments is necessarily crowded with business, the necessity may exist for the transfer of misdemeanors and petty offenses to inferior courts, with a view of relieving the higher courts of the burden of trying the same, while in other counties no such necessity exists. And it may be for this very reason that the constitution provides for the establishment of inferior courts in cities, towns, and cities and counties, and not generally throughout the state.

It is further insisted by the respondents that if jurisdiction is conferred upon the police courts, it is concurrent with the superior courts, and not exclusive. And in support of this position, counsel cite *Courtwright* v.

*B. R. & A. W. M. Co.*, 30 Cal. 574; *Ex parte McCarthy*, 53 Cal. 412; *Rosenberg* v. *Frank*, 58 Cal. 395.

We have carefully examined the cases cited, and find that they lay down the well-established rule that where jurisdiction is given, either by the constitution or by statute, to two different courts, not indicating whether such jurisdiction shall be exclusive or concurrent, that the same may be regarded as concurrent in both courts. But these cases do not reach the question presented here, for the simple reason that in our judgment the constitutional provision we are considering does indicate in plain terms that the jurisdiction of inferior courts thereafter to be created shall be exclusive, and not concurrent. The evident purpose of the constitutional provision, as evinced by its language, is, that the jurisdiction of the superior court shall be conditioned upon the establishment of other courts upon which the same jurisdiction shall be conferred, and when that condition happens, and the jurisdiction is by the legislature conferred upon such inferior courts, from that time the constitution itself transfers such jurisdiction from the superior court and vests it in the inferior courts. From that time the jurisdiction is "otherwise provided for," and the jurisdiction of the superior court at once ceases.

Again, it is contended that the jurisdiction in this case could not constitutionally be conferred upon the police court, for the reason that the offense is one that must be prosecuted by indictment or information, and that no such practice is provided for in case of such inferior courts.

What has been said upon the other points made is decisive of this question, and for the very same reasons. The distinction between high and low misdemeanors is one that has never been recognized in this state. The constitution and statutes relate exclusively to felonies and misdemeanors. The dividing line between the two is clearly marked and defined. The common-law dis-

tinction between high and low misdemeanors, depending upon the question whether the offense charged was infamous or not, was more imaginary than real, and calculated to lead to great confusion and uncertainty in the administration of justice. To attempt, in this state, to perpetuate such a distinction would necessarily increase the avenues through which criminals too often escape justice. It is contended that the offense charged here was a high misdemeanor, and always prosecuted by indictment prior to the adoption of the constitution of 1879, and that justices' courts never had jurisdiction of such offenses. But this is a mere assertion, without authority to support it, and this court has expressly held that under the present constitution the legislature is empowered to establish justices' courts, and confer upon them such powers as to it shall seem proper, and that under this provision the legislature may confer jurisdiction in the justices' courts over misdemeanors, and that such jurisdiction is exclusive. (*Ex parte Wallingford*, 60 Cal. 104; *Gafford* v. *Bush*, 60 Cal. 149.)

The power given the legislature by the constitution is not limited to any class of misdemeanors, high or low, but extends to such offenses generally. (Const., art. 6, sec. 13.) Therefore, to hold that it is unconstitutional to try a misdemeanor of the kind here charged in a justices' or police court, is to hold that the provision of the constitution referred to is itself unconstitutional. That it was the intent that such jurisdiction might be conferred upon inferior courts is manifest from the fact that the jurisdiction had already been conferred upon the police court by an act which was in force at the time the present constitution was adopted. (Stats. 1871–72, p. 84.)

The jurisdiction, so far as it relates to this particular court, has not been changed since the constitution was adopted. It was a misdemeanor "already provided for," and strictly within the letter of the constitution. The

point made, that this class of cases cannot be prosecuted in inferior courts because they must be presented by indictment or information, does not affect the question of jurisdiction.

As was said in *Ex parte Wallingford*, 60 Cal. 104: "But counsel entirely overlook the all-important fact that the jurisdiction of the offense is not determined by the *form of procedure* by which it is prosecuted, but by the *nature of the offense itself*. And since, as already shown, the superior court has no jurisdiction of such misdemeanors as have been committed by the legislature to the justices' court, and since the legislature has committed to the last-named court all cases of petit larceny, a conclusion quite the reverse of that drawn by respondent's counsel would seem to follow from section 976 of the Penal Code."

Section 13 of article 6 of the constitution provides: "The legislature shall fix by law the jurisdiction of any inferior courts which may be established in pursuance of section 1 of this article, and shall fix by law the powers, duties, and responsibilities of the judges thereof."

Under this section the legislature has power to confer upon such courts jurisdiction in all cases not vested in some other court *by the constitution*. (*Gafford* v. *Bush*, 60 Cal. 149.)

That all misdemeanors are included in this power is clearly apparent from the fact that jurisdiction of such offenses is, by the constitution itself, withheld from the higher courts upon provision being made by the legislature vesting it in such inferior courts. These cases could only be "otherwise provided for" by vesting the jurisdiction in such *inferior* courts as the legislature might establish, for the reason that power to create other courts, and to confer jurisdiction upon them, is confined to such inferior courts.

The legislature has acted upon this provision by conferring jurisdiction upon police courts in cities having a

population of not less than thirty thousand, nor more than one hundred thousand inhabitants, in *all* misdemeanors.    (Stats. 1885, p. 213.)

If counsel are right, that only low misdemeanors can be prosecuted in such courts, so much of this act as includes high misdemeanors is unconstitutional, and the court in which the action is commenced must, in every case, in order to fix its jurisdiction, determine whether the offense charged belongs to one or the other of the two classes of misdemeanors.

We find nothing in the constitution which leads us into this labyrinth of uncertainty. Its provisions are plain and direct. If one misdemeanor is within its terms, all must be; that it does confer the power to vest exclusive jurisdiction of some misdemeanors in inferior courts, has been decided by this court, as we have seen, in two well-considered cases; that it relates, in terms, to all misdemeanors, is equally clear to our minds.

The questions of law involved are raised by demurrer, but counsel have discussed the whole case in their briefs in such manner as to indicate to us that there was no dispute as to the facts, and we have considered the case fully with that understanding. If, however, it is desired, the respondent is allowed ten days within which to file an answer. If no answer is filed within the time limited, a peremptory writ of prohibition will issue as prayed for.

SHARPSTEIN, J., McFARLAND, J., THORNTON, J., and BEATTY, C. J., concurred.

PATERSON, J., dissenting.—It seems to me that my brothers have fallen into error in assuming that the offense with which this petitioner stands charged is not an "infamous offense," within the meaning of our constitution, simply because it is a misdemeanor. The question whether an offense is an "infamous offense" or not does not depend

upon the nature or extent of the punishment; it is the nature of the crime, not the punishment, which makes it infamous. At common law, persons convicted of petty larceny and whipped were held incompetent witnesses because infamous, but no matter how infamous the *punishment*, unless it was inflicted for a capital offense, a crime against nature, or for forgery, perjury, or some other species of *crimen falsi*, infamy did not attach. (*Pendock* v. *Mackinder*, Willes, 665; Co. Lit., 6 b, n. 1; *United States* v. *Porter*, 2 Cranch C. C. 63; *State* v. *Gardiner*, 1 Root, 485; *People* v. *Whipple*, 9 Cow. 708.) There are no authorities to the contrary, and there is no doubt that at common law a conspiracy to "falsely and maliciously indict another for any crime, or to procure another to be charged or arrested for any crime," — which is the charge against this petitioner, — was an infamous offense. It is infamous in fact, infamous in law. (1 Greenl. Ev., sec. 373, note, and cases cited therein.)

In New York and some other states the term "infamous crime," when used in any statute, is defined by statute to include only such offenses as are punishable with death or by imprisonment in the state prison. No such construction has ever been put upon the term in this state. We are therefore bound to presume that it is used in the constitution and in the laws in the same sense that it was used at common law. (Pol. Code, sec. 4468; *United States* v. *Block*, 4 Saw. 214; *Lyford* v. *Farrar*, 31 N. H. 315.)

The constitution of 1863 provides that "no person shall be held to answer for a capital or otherwise infamous crime (except in cases of . . . . petty larceny . . . . ), unless on presentment or indictment of a grand jury." That rule is referred to and is re-enacted by the new constitution, with the exception that prosecutions may now be had by information. (Art. 1, sec. 8.) The constitution of the United States is almost identical in language with our own on this subject. It provides: "No person

shall be held to answer for a capital or otherwise infamous crime, unless on presentment or indictment of a grand jury, except," etc. (Art. 5, Amendments.) It has been decided by the national courts that this "amendment to the constitution of the United States prohibits any proceeding other than by indictment in all cases of infamous crimes, whether they are misdemeanors or not." (*United States* v. *Block, supra.*) In that case Judge Deady said: "The word 'infamous,' as used in the fifth amendment, must be taken in the sense in which it was used and understood at the common law from which it was taken. That is the sense in which it was used and understood by those who made and adopted the constitution and the amendments to it. (*Rains* v. *The Schooner*, 1 Bald. 558.) As has been shown, at common law, this term was applicable only to certain crimes, which from their nature implied a total want of truth in the person committing them, *without reference to the fact of whether they were otherwise distinguished as felonies or misdemeanors. Neither was it the punishment, but the nature of the act constituting the crime, which made it infamous; ex delicto non ex supplicio emergit infamio.* . . . . The following have been determined to be such crimes: forgery, perjury, subornation of perjury, suppression of testimony by bribery, or conspiracy to procure the absence of a witness, *or other conspiracy to accuse one of a crime.*"

But it is useless to examine the authorities upon the question whether the distinction between crimes infamous and those which are not infamous depends upon the grade of the offense,—whether a misdemeanor or a felony. The provision of the constitution of 1863, which we have quoted above, expressly excepts from the class of offenses designated as infamous crimes "cases of petty larceny." Here is a clear recognition of the fact that there were infamous offenses in this state which were misdemeanors, for petty larceny itself, one of the cases excepted, is a

misdemeanor; and this provision is re-enacted in section 8, article 1, of our present constitution.

If I am correct in saying that the infamy of the crime with which this petitioner stands charged does not depend upon the question whether it is a felony or a misdemeanor, and that it is to be considered as it was at common law, an infamous offense, — and such seems to me to be the clear letter of the constitution in the bill of rights, — then there is no machinery by which a prosecution can be had in the police court, and that court has no jurisdiction. A statute conferring jurisdiction upon an inferior court, without making provision for a procedure therein consistent with the constitutional rights of the citizen, is abortive and void. (*Thomas* v. *Bibb*, 44 Ala. 723.) If it be conceded that the legislature might provide for prosecutions in police courts by indictment or information, it is sufficient to say that it has not done so. If this court has ever said that the form of procedure by which an offense is prosecuted is immaterial (i. e., with or without a preliminary examination by magistrate or grand jury), such decision is to be regretted, and should be overruled; for it not only violates the plain letter of the constitution, but deprives the citizen of one of the most valuable rights guaranteed to him by the constitution itself. It was never intended by those who framed the constitution, or by those who adopted it, to give to inferior courts the power to try a citizen for an offense of so grave a nature simply upon an affidavit. The right to be free from prosecutions for such offenses, except after an examination by a grand jury, or a committing magistrate, after opportunity to be heard before the latter, is a valuable right, and one that the framers of all constitutions have preserved to the citizen. A judgment of conviction in cases like the one before us not only subjects the defendant to a heavy fine and imprisonment, but deprives him forever of "the privileges of an elector in this state." (Art. 2, sec. 1, Const.)

But I cannot read *Ex parte Wallingford*, or *Gafford* v. *Bush*, so as to construe it as it is construed in the leading opinion. The question before the court in *Ex parte Wallingford* was, whether the superior court had jurisdiction in cases of petit larceny. It was held that it had not. As we have shown above, cases of petit larceny are expressly excepted from the operation of article 1, section 8, of the constitution, and this is what was decided in *Ex parte Wallingford*,—nothing more. That case not only does not sustain the contention of the petitioner here, but, as I read it, it is by implication an authority directly to the contrary; for the court there said: "Whether or not there are any misdemeanors included within the provisions of section 115, *which are required by the provisions of the constitution to be prosecuted by indictment or information, need not be determined in this case.* But it is clear that there is nothing in the constitution which prohibits the legislature from requiring the crime of *petit larceny* to be otherwise prosecuted. . . . . It will be thus seen that cases of petit larceny are *expressly excepted from the constitutional provision prescribing the mode of prosecution, and are left to the regulation of the legislature.*"

Here is a clear intimation that there are classes of misdemeanors for which the constitution has prescribed the mode of prosecution. In *Gafford* v. *Bush* the question was, whether the superior court had jurisdiction of an indictment charging a person with keeping open a saloon on Sunday. No one contended in that case that the crime charged was an infamous offense, and, of course, as the penalty was a fine not exceeding five hundred dollars, or imprisonment not exceeding six months, or both such fine and imprisonment, it was held that the legislature had properly invested the justices' court with jurisdiction. In that case, the questions considered and decided by the court in *Ex parte Wallingford* were affirmed, and the court there, too, seems to intimate that it was not intended to be left

to the legislature to vest jurisdiction in other courts than the superior courts in all misdemeanors, but only "in a certain class or classes of minor offenses . . . . ; for by it the superior courts would be left to attend to cases of a more important character, and they would not consume time in trying persons charged with petty offenses, to the neglect of matters of a graver nature."

With the expediency of the constitutional provision under consideration we have nothing to do. It may be true that it will be difficult in some cases to determine whether the offense charged is an infamous offense or not, but that is a matter for future consideration. It is often difficult to tell whether a given matter is a matter of law or of fact, but the difficulty in determining the matter does not affect the distinction.

It is claimed that the justices' court has heretofore been given jurisdiction of these offenses. I have been unable to find any statute in support of this contention. It is true, as claimed, the legislature has attempted to confer upon the police court by the act of 1871–72 jurisdiction in all misdemeanors where the penalty is a fine of one thousand dollars, or imprisonment for one year, or both fine and imprisonment, but such an attempt cannot override a plain constitutional provision. The language of the constitution is: "Offenses heretofore *required* to be prosecuted," etc. Prior to the adoption of that provision, as we have shown, the constitution of 1863 required all infamous crimes, except petit larceny, to be prosecuted by presentment or indictment.

Without considering any other of the points made by the respondent, it seems to me clear that the jurisdiction to try the offense with which the petitioner stands charged must rest in the superior court, at least until some machinery is provided for a prosecution by indictment or information in the police court.